520 P.2d 843

**STATE of Arizona, Appellee,**

v.

**William R. BENGE, Jr., et al., Appellants.**

**No. 2545.**

Supreme Court of Arizona,
In Banc.
April 4, 1974.

474

Gary K. Nelson, Atty. Gen., Phoenix, William Michael Smith, Yuma County Atty., Yuma, for appellee.

Ronald McKelvey, Yuma, for appellants.

LOCKWOOD, Justice:

Appellants, William Benge, Patrick Gregory and Felipe Sanchez, were tried and convicted of possession of marijuana for sale in violation of A.R.S. § 36–1002.06 and transportation of marijuana in violation of A.R.S. § 36–1002.07. All three appellants were sentenced to serve six to twelve years in the Arizona State Prison. From both their sentences and convictions the appellants appeal.

The facts in this case are as follows. On December 1, 1970 Officer Capp of the Arizona Department of Public Safety received a phone call from Sgt. McNight of the Narcotics Division of the Los Angeles Police Department who informed Capp that he had received information from an informant that a large marijuana transaction would occur in Yuma, Arizona that night. McNight further related that the informant said that the two Yuma residents involved were known to the informant as "Pat" and "Bill", gave their physical description, a telephone number, and that they would be driving a blue Plymouth car. Officer Capp and Officer Barcus of the Narcotics Division of the Arizona D.P.S. then contacted a confidential and reliable informant in Yuma who told them that the phone number furnished to Officer Mc-Night was that of Patrick Gregory who was a Marine then stationed in Yuma at the Marine Corps Air Station. Officer Capp then contacted the Naval Intelligence Officer of the Marine Corps Air Station who informed him that he had received past information which implicated Gregory with one Felipe Sanchez in smuggling marijuana. He further stated that Agent Land of the United States Customs Bureau had considerable information on the operation. Officer Capp then contacted Agent Land and was given further information concerning the two suspects.

Officer Capp then contacted the U.S. Customs and the Yuma City-County Narcotics Task Force and requested surveillance of the homes of both suspects. Later that day it was learned that the transaction involving 75 kilograms of marijuana would take place that night at the Yuma International Airport at approximately 7:00 P.M. and that Sanchez and Gregory would be involved.

During the afternoon while the suspects were under surveillance, they were observed by Officer Capp at the Yuma International Airport where they approached a private aircraft. They received a number of suitcases from the aircraft which they placed in their automobile, a 1970 Dodge Super Bee.

At approximately 7:00 P.M. that night the same Dodge followed by Gregory's blue Plymouth were observed entering the Yuma International Airport. The two cars drove behind the F.A.A. building where Officer Capp lost sight of them. Meanwhile, Sgt. Burke who had flown in to take part in the operation was maintaining surveillance of the Burch Aviation Building and maintaining radio contact with the other officers taking part in the surveillance of the suspects. Burke radioed the other officers involved and informed them that the suspects had gotten out of the car and had talked with another suspect and that the three defendants were examining kilogram-sized bricks of what appeared to be marijuana in the trunk of the Dodge. The suspects were then seen to replace the suitcases in their automobile and leave by the same route which they had come.

At that point Officer Capp gave the order to stop the vehicle in question and arrest the suspects. The suspects were taken into custody and their vehicle was searched. The search turned up 75 kilogram bricks of marijuana which were packed in suitcases and a duffle bag. Also seized were two pistols from inside the automobile.

At the trial Officers Burke and Capp testified for the state as to the events which they had witnessed. The defendants did not present a defense in their own behalf. The defendants were convicted on both counts by the jury.

Appellants first contention is that the trial court erred in refusing to order the state to reveal the identity of the informant. It should be noted that the state was ordered to and did comply with the court's order that the prosecution provide the names of all witnesses to the crime. Therefore the error cited by the appellants is the refusal of the state to furnish the defense with the identity of the informant rather than the names of all the witnesses. Subject to certain limitations, the general rule is that the state is privileged to withhold from disclosure, notwithstanding its relevance, the identity of persons who furnish information to law enforcement officers of criminal acts. The privilege is founded upon public policy. It seeks to further and protect the public's interest in effective law enforcement. By recognizing the obligations of citizens to inform the police of their knowledge of crimes and by preserving their anonymity citizens are encouraged to fulfill their obligations.

In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court set out the basic principles for determining when a defendant is entitled to require the prosecution to name the informant. There is no fixed rule as to when disclosure is required. Rather a balancing test must be utilized. Disclosure depends upon the circumstances of each case taking into account the crime charged, the possible defenses, the possible significance of the informant's testimony, and any other relevant factors. In short, where it appears that the disclosure of the name is necessary or desirable to show the defendant's innocence or that nondisclosure would deprive defendant of a fair trial then the privilege must give way.

We have held that a defendant seeking to overcome the basic policy of preserving the informant's identity has the burden of proving that the informant is likely to give evidence bearing on the merits of the case. State ex rel. Berger v. Sup. Ct., 106 Ariz. 470, 478 P.2d 94 (1970).

In his brief counsel for the appellants raises five grounds for showing what would be served by disclosing the identity of the informant. After examining the record we can find no merit to any of the reasons set forth by the appellants. It is undisputed that the appellants were arrested while carrying large quantities of marijuana. This fact alone would furnish prima facie evidence of guilt. Based upon the facts of this particular case we find that the disclosure of the name of the informant could serve no useful purpose.

Appellants next contend that it was error for the trial court to refuse to grant a continuance to enable the defense to subpoena the informer after the defense learned his identity and whereabouts during the trial. A motion for a continuance is not granted as a matter of right. Such a matter is solely within the sound discretion of the trial judge whose decision will not be disturbed unless there is a clear abuse of discretion and unless denial of the motion is shown to be prejudicial to the defendant. State v. Guthrie, 108 Ariz. 280, 496 P.2d 580 (1972). The appellants failed to show how they were prejudiced and made no offer of proof. Under these circumstances we find that there was no error on the part of the trial judge to deny appellants' motions for a continuance.

Appellants also contend that there was insufficient probable cause to make a warrantless search of their automobile. Based upon the record in this case we find appellants' argument wholly frivolous. We note that the arresting officers had the information of two reliable informants, they had the benefit of information gathered by numerous law enforcement agencies, two of the suspects were positively linked to dealings in marijuana traffic, the Yuma area is well known as a center of marijuana smuggling, both suspects were under constant surveillance, they had been seen earlier that day to have received a number of suitcases from a private aircraft, and they were seen by an officer to have examined the contents of the suitcases in

their automobile and the packages appeared to be kilogram bricks of marijuana. In light of these circumstances there can be no doubt but that probable cause to arrest the appellants and search their car for contraband existed.

Appellants also raise the issue that the search and seizure of the contraband was illegal notwithstanding the existence of probable cause where there was sufficient time to procure a warrant.

For constitutional purposes, there is no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and on the other hand, carrying out an immediate search without a warrant; and that given probable cause to search either course was reasonable under the Fourth Amendment. In Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L. Ed. 629 (1931) the court rejected the argument that since sufficient time had elapsed between the officer's receipt of the information and the search of the automobile to have enabled him to procure a search warrant, the search was unreasonable.

It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

While concluding that probable cause for the search of an automobile did not exist, in Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Court recognized that automobiles, because of their mobility, could be searched without a warrant upon facts not justifying a warrantless search of a res-

idence or office, so long as the officers conducting the search of the automobile had probable cause to believe, prior to beginning the search, that they would find the instrumentality of a crime or evidence pertaining to a crime.

Likewise here the officers making the search had probable cause to make their search and there was no necessity for them to procure a warrant prior to making the search under the circumstances.

Appellants also contend that it was error for the trial court to admit the two guns found in the appellants' car at the time of their arrest into evidence. We do not agree. In State v. Mahoney, 106 Ariz. 297, 475 P.2d 479 (1970) we held a gun was properly admitted into evidence in a prosecution for transportation of marijuana as showing the complete story of the transportation of the marijuana and arrest. That holding is equally applicable in the instant case.

Appellants contend that it was reversible error when the prosecutor asked a witness for the state if he had heard anything to the effect that the appellants had attempted to use the guns to resist arrest and the witnesses affirmatively answered. Defense counsel's objection to the hearsay question and the answer was sustained and the question and answer were stricken. The court further admonished the jury to ignore both the answer and the question. The prosecution directed no more questions to the witness. The relief requested by the defense was granted and any possible error was cured under those circumstances.

Appellants further contend that they were denied the right to a fair trial due to two instances of misconduct on the part of one of the jurors. The first alleged instance occurred in a bar after the first day of trial. The juror was overheard by one of the appellants to have referred to defense counsel in a derogatory manner. The juror denied making such a comment. The second instance was a statement the juror muttered to himself as

he was leaving the courtroom. The testimony is contradictory but at worst the juror was upset by the delaying tactics of defense counsel which caused the trial to be continued over the weekend. While we do not approve of jurors making their opinions of counsel public while the trial is in progress, we recognize that all jurors develop opinions of counsel based upon their performance during the trial. However we cannot see how that alone would deny the appellants their right to a fair trial.

■ With regard to appellants' contention that the juror was acquainted with the prosecuting attorney, we have no doubt that in a town the size of Yuma many of the residents would be acquainted with the prosecuting attorney as well as with the defense attorney. However that alone is insufficient to demonstrate that the appellants were prejudiced by the acquaintanceship. In such instances it is up to the defense counsel to go into the matter at the time the jury is impaneled. Having failed to do so and having failed to show that they were prejudiced, we find that there was no error.

■ Appellants designate as error the submission of multiple counts based on common elements. Such a procedure it is argued would result in excessive prejudice to the appellants because a jury is more likely to find the defendants guilty if two crimes are charged. In support of this argument the appellants rely on State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965). It was held that where each of the separate charges referred to the same conduct charged to the defendants and stated the crime in different ways, the defendants in that case were prejudiced by the cumulative effect of the charges. The instant case is readily distinguishable from Hunt, supra, on the facts. In the instant case the totality of proof required for conviction on the transportation of marijuana is not the same as that required for conviction on the charge of possession of marijuana for sale. It was properly left for the jury to determine which charge the facts would sup-

port. State v. Schwartz, 14 Ariz.App. 531, 484 P.2d 1060 (1971).

■ Where the jury has determined that the facts support both charges, then A.R.S. § 13–1641 which prevents double punishment becomes applicable. Having found that the appellants should not have been convicted of both charges, we hold that the appellants' convictions for possession of marijuana for sale must be vacated. State v. George, 108 Ariz. 5, 491 P.2d 838 (1971).

■ It is also contended by the appellants that it was error for the court to admit illegally seized evidence at a hearing in aggravation. With this contention we do not agree.

The only case we have found in agreement with this proposition is Verdugo v. United States, 402 F.2d 599 (9 Cir. 1968). This was an opinion by three judges, one of whom dissented. We believe the dissent is in accord with the United States Supreme Court decisions. In Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) the appellant was convicted of first degree murder and the jury recommended life imprisonment. A presentence report containing much unfavorable matter with regard to the criminal record of the appellant was reviewed by the trial judge. The appellant was denied the privilege of confrontation or cross-examination of the persons who had provided the information. The trial judge sentenced the defendant to death and on appeal to the Supreme Court of the United States the defendant claimed that his rights under the Sixth and Fourteenth Amendments were violated by the sentencing judge in refusing him the opportunity of confrontation or cross-examination. The argument was not accepted by the Supreme Court which noted that sentencing is entirely separate from the determination of guilt.

"To deprive sentencing judges of this kind of information would undermine modern penalogical procedural policies that have been cautiously adopted throughout the nation after careful con-

sideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." 337 U.S. at 249–250, 69 S.Ct. at 1084, 93 L.Ed. at 1343.

To the same effect is Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). In citing the Williams v. New York case the court said:

> "This Court there dealt with very similar contentions and held that, once the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." 358 U.S. at 584, 79 S. Ct. at 426, 3 L.Ed.2d at 521–522.

In the case of United States v. Schipani, 435 F.2d 26, cert. den., 401 U.S. 983, 91 S. Ct. 1198, 28 L.Ed.2d 344 (1971) the Circuit Court of the Second Circuit held that there was no error in using illegally seized evidence in connection with fixing sentence, and held that the court could use wiretap evidence which had been excluded from the trial as being obtained in violation of the Fourth Amendment, in the following language:

> "Where illegally seized evidence is reliable and it is clear, as here, that it was not gathered for the express purpose of improperly influencing the sentencing judge, there is no error in using

it in connection with fixing sentence." 435 F.2d at 28.

 Finally the appellants argue that the sentences of from six to twelve years of incarceration were excessive. The sentences imposed were within the statutory limits. We have read the record and find no abuse of discretion. We will not disturb the judgment of the trial court absent such a showing of abuse of discretion. State v. Nunez, 109 Ariz. 408, 510 P.2d 380 (1973); State v. Masters, 108 Ariz. 189, 494 P.2d 1319 (1972).

The convictions for transportation of marijuana are affirmed. The convictions for possession of marijuana for sale are vacated.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.