554 P.2d 919

**STATE of Arizona, Appellee,**

v.

**Juan Luna CASTRO, Appellant.**

**No. I CA-CR 1226.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 9, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Westover, Choules, Shadle & Bowen by Allen J. Clark, Yuma, for appellant.

## OPINION

FROEB, Judge.

The appellant, Juan Luna Castro, was found guilty by a jury on Count I, importing marijuana (A.R.S. § 36–1002.07), Count II, transporting marijuana (A.R.S. § 36–1002.07), and Count III, possession of marijuana for sale (A.R.S. § 36–1002.06). The trial court sentenced appellant to a term of not less than two nor more than six years on Count III, possession of marijuana for sale, and, after determining that for the purpose of sentencing Count I, importing marijuana, should be combined with Count II, transporting marijuana, suspended imposition of sentence on Count II and placed appellant on probation for a period of five years. On appeal from the convictions and sentence the appellant contends that evidence was seized from his possession in violation of the fourth amendment of the United States Constitution and should have been suppressed. On review we consider this issue as well as the propriety of the sentence which, although not briefed, was raised by counsel at oral argument.

The undisputed facts indicate that the search involved here occurred near the international border at San Luis, Mexico, which the parties stipulated was an area known for a high incidence of smuggling. The specific area does not appear from the record to be inhabited, with the exception that in the vicinity there was a tent used by the United Farm Workers union as a station for members assigned to watch the general area for illegal aliens, an effort apparently made by the union to assist the Border Patrol. There is a dirt road leading away from the area of the tent which extends away from the border and eventually connects with other roads. None of the events of the case involve the use of this road.

Officer Monwell Fuller, a United States customs patrol officer, was on duty the night of December 19, 1974, in the area described. After parking his car about 100 yards from the international fence, he noticed a 1965 Buick driving west along the fence on a sandy track known as a "drag strip." While not a road, the "drag strip" is traversable by car and is used by border patrol agents to patrol the international fence and to detect alien traffic. There is no indication from the record whether the drag strip is used by the public for car travel, but there is an implication that it is not so used, as it is periodically dragged smooth to detect tire and foot prints. There is no showing, one way or the other, as to whether the drag strip is posted against public use. When appellant's car was seen proceeding along the fence, Fuller started his car and followed it to the paved road, where he stopped it. He approached the driver, identified himself and asked appellant, the driver and sole occupant, to open the trunk. When Fuller saw the load of 221 marijuana bricks in the compartment, he placed appellant under arrest and called on the radio for an interpreter, as appellant spoke to him only in Spanish. Meanwhile, narcotics agents were notified and appeared on the scene. The appellant was arrested and the marijuana seized for evidence.

While unknown to Officer Fuller prior to the arrest, he later learned from other agents that there was an opening in the international fence about one mile from where he first noticed appellant's car and that an entry across the border had been made through it. Since this knowledge on the part of Fuller did not precede his arrest of appellant, it cannot be given any significance in evaluating the circum-

stances of the arrest in terms of compliance with the requirements of the fourth amendment.

◼ It is well to state at the outset that, for the purposes of the fourth amendment, there is a constitutional difference between houses and cars, which in certain cases will justify a warrantless search. *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974). The difference turns primarily on the mobility of the automobile and the impracticability of obtaining a warrant in many instances. "Warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not." *South Dakota v. Opperman*, ⎯ U.S. ⎯⎯, 96 S.Ct. 3092, 49 L. Ed.2d 1000 (Decided July 6, 1976). One reason, as this recent United States Supreme Court case points out, is that there is, with an automobile, a lesser expectation of privacy. In upholding the search here, this factor would most certainly be present.

We turn, then, to whether the search and seizure were lawful.

◼ The law is well-settled as to the search of cars by law enforcement authorities in areas not associated with the United States border. Absent a valid warrant, a car may be searched only where there is probable cause to believe that the car is carrying contraband or illegal merchandise. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Sardo*, 112 Ariz. 509, 543 P.2d 1138 (1975). We assume, without deciding, that the circumstances which were apparent to Officer Fuller on the night here in question did not rise to that level.[1]

◼ The law is less settled with respect to searches associated with the border. With respect to this category, a distinction must be drawn between searches for aliens and illegal contraband conducted some distance from the border and those conducted *at* the border or "its functional equivalent." While we place the search here in the latter category, some mention of the former is warranted.

The United States Supreme Court has ruled that a search made by a roving patrol unit without probable cause on a California state highway 25 miles north of the Mexican border violated the fourth amendment, even though conducted by the United States Border Patrol in performance of its duties under United States immigration laws. *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Prior to *Almeida-Sanchez*, it had frequently been held that a causeless search for aliens could be conducted within 100 miles of the border.[2] In 1975, the Supreme Court decided that the *Almeida-Sanchez* rule also applied to searches at fixed checkpoints located away from the border. *United States v. Ortiz*, 422 U.S. 891, 95 S. Ct. 2585, 45 L.Ed.2d 623 (1975).[3] Searches of vehicles for aliens and contraband away from the border made without probable cause also have been approved in certain limited instances where the search is reasonably equivalent to a search at the border. One example is a "deferred" border search, where a vehicle is known to have crossed the border without inspection and is kept in view after it leaves the border. If the ensuing search uncovers contraband which was, with reasonable cer-

---

1. The search was sustained, however, by the trial court on the basis of a finding of probable cause.

2. Title 8 U.S.C. § 1357(a) authorizes a United States immigration officer under regulations prescribed by the Attorney General to search a car for aliens within a reasonable distance of the border. A reasonable distance has been defined by the Attorney General as within 100 air miles of the border. 8 C.F.R. 287.1 (a)(2) (1964).

3. Nevertheless, at fixed checkpoints away from the border, the Supreme Court has recently approved stops for questioning (as distinguished from searches) which are routinely conducted. *United States v. Martinez-Fuerte*, ⎯ U.S. ⎯⎯, 96 S.Ct. 3074, 49 L.Ed. 2d 1116 (Decided July 6, 1976). Earlier, the court had approved such stops by a roving patrol at the border or its functional equivalent. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

tainty, in the vehicle at the time of the border crossing, it has been upheld. See *Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966). Another instance is where the person or vehicle searched has not been seen to cross the border, but, from the circumstances, it appears with reasonable certainty that the person or vehicle crossed the border without inspection. See *United States v. Weil*, 432 F.2d 1320 (9th Cir. 1970).

■ Turning to searches *at* the border conducted by customs and immigration officers, it is well-settled that probable cause is not required. See *Witt v. United States*, 287 F.2d 389 (9th Cir. 1961). "Mere suspicion" is sufficient to justify a border search. *Cervantes v. United States*, 263 F.2d 800 (9th Cir. 1959). Nevertheless, the search must still meet the minimum fourth amendment standard of "reasonableness." See *Denton v. United States*, 310 F.2d 129 (9th Cir. 1962).

The absence of a constitutional requirement for probable cause in searches at the border is traceable to the early days of the nation. Since 1789, customs officers have been allowed to search vehicles, persons and baggage brought into the United States on the suspicion that contraband or merchandise subject to duty was being concealed. Act of July 31, 1789, Ch. 5, § 24, 1 Stat. 29, 43. The same authority is in effect today. 19 U.S.C. § 482. Immigration officials were authorized in 1875 to search at the border for aliens seeking entry into the United States. Act of March 3, 1875, Ch. 141 § 5, 18 Stat. 477. They have this authority today also. 8 U.S.C. § 1357(a)(3). For a general review of the history of border search legislation, see Barnett, *A Report on Search and Seizure at the Border*, 1 Am.Crim.L.Q. 36 (1963). In 1971, immigration and customs searches were merged when Border Patrol agents became authorized to act as customs officers. See *United States v. Thompson*, 475 F.2d 1359 (5th Cir. 1973), which outlines the basis of this authority. While the authority of immigration and customs officials to search without probable cause is statutory in origin, it has not been found violative of the fourth amendment when invoked at the border or its functional equivalent. See *Almeida-Sanchez v. United States,* supra. It is here that the potential infringement upon fourth amendment rights is outweighed by legitimate governmental interest in the detection of aliens and discovery of contraband crossing the international border.

■ The extent of the causeless search zone at the border, or its functional equivalent, is potentially a difficult issue. We are referred to no decision drawing exact limits. It appears that a search permissible "at the border" will, in certain circumstances, be permissible at "the functional equivalent" of the border. See *Almeida-Sanchez v. United States,* supra; *United States v. Tilton*, 534 F.2d 1363 (9th Cir. 1976); *United States v. Solmes*, 527 F.2d 1370 (9th Cir. 1976). Whatever the outer limits of a search at the border or its functional equivalent may be, we have no difficulty in deciding that the search here occurred at the border or its functional equivalent.[4] The car was no more than five to ten feet from the international fence, traveling on a sandy drag strip not more than 100 yards from the official border crossing or port of entry. The essential question is whether the lack of knowledge by Officer Fuller either that the car or the defendant had actually crossed the border without inspection prevents the search from being a "border search." We do not think it does.

■ It is sufficient if there are articulable facts which make it appear with reasonable certainty from the circumstances that the vehicle or its occupants have crossed the border. *United States v. Weil,* supra. These facts are measured against

---

4. The search was in a sense deferred from the point at the international fence to a paved road a short distance away. The defendant's car was, however, under constant surveillance by Officer Fuller from the point at the fence until it reached the paved road.

an objective reasonable man standard and are not necessarily dependent upon the subjective impression of the particular officer. *United States v. Mallides,* 473 F.2d 859 (9th Cir. 1973). Where it appears with reasonable certainty the vehicle or its occupants have crossed the border illegally, the ensuing search may be made on suspicion alone. *United States v. Markham,* 440 F.2d 1119 (9th Cir. 1971).

The facts and circumstances here made it appear reasonably certain that the vehicle, or its occupants, had just crossed the border when Officer Fuller took action. It was approximately eleven o'clock at night in an area not intended for travel by the public; the location was at the international fence approximately 100 yards from the port of entry; there was no other vehicular traffic; the general area is known to have a high incidence of smuggling. Officer Fuller was therefore justified in stopping appellant's car and conducting a search of the trunk compartment without probable cause. We find the search and subsequent seizure of the 221 bricks of marijuana from the trunk of the car was reasonable and did not violate the fourth amendment. The trial court was justified in denying the motion to suppress and permitting the marijuana to be received in evidence.

■ We turn next to the validity of the convictions and sentences arising from proceedings in the trial court. Appellant was convicted by the jury of three counts, all arising from the same factual circumstances, namely: Count I, importing marijuana; Count II, transporting marijuana; and Count III, possession of marijuana for sale. Counts I and II represent convictions of the same statutory section (A.R.S. § 36–1002.07) which provides for a sentence of not less than five years nor more than life in the state prison, with the further condition that a minimum of three

years be served before parole eligibility. As previously noted, the trial court combined the conviction of importing marijuana with the conviction for transporting marijuana for purposes of sentencing and suspended imposition of sentence on the combined Counts I and II for a period of five years. On the other hand, Count III, possession of marijuana for sale, represents a conviction of a different statutory section (A.R.S. § 36–1002.06) which provides for a sentence of not less than two nor more than ten years in the state prison, with the further condition that a minimum of two years be served before parole eligibility. In contrast to Count II, the trial court imposed sentence on Count III for a term of not less than two nor more than six years in the state prison.[5]

■ The question presented by these sentence proceedings is whether only one conviction can be allowed to stand under the facts, and, if so, which one, with the further question of whether the case should be remanded to the trial court for resentencing.

The first issue is brought about by reason of A.R.S. § 13–1641 which prohibits double punishment for the same act. This has been construed to bar not only a double sentence, but also the underlying double conviction. *State v. Ballez,* 102 Ariz. 174, 427 P.2d 125 (1967).

In deciding whether the facts of the case will support more than one conviction, the Arizona Supreme Court has held that the test is to eliminate the elements contained in one charge and determine whether the facts left would support the other charge. *State v. Mendoza,* 107 Ariz. 51, 481 P.2d 844 (1971).

The three convictions in this case have very nearly the same elements. If the facts supporting the elements of any one are eliminated, there are insufficient facts to

---

5. A concurrent term of probation under one count and prison on another is, standing by itself, an erroneous sentencing, as the two are in conflict. We deem this to be the effect of the holding in *State v. Pakula,* 113 Ariz. 122, 547 P.2d 476 (1976). The problem in this case is made moot, however, since we conclude that the suspended sentence and term of probation on Count II must be vacated for other reasons.

support either of the other two. The Arizona Supreme Court has so held under identical charges. *State v. Benge,* supra.

As only one conviction can stand, the question is, which one? The Arizona Supreme Court has held generally that the lesser conviction should be vacated. *State v. Ballez, State v. Mendoza, State v. Benge,* supra. *State v. Arce,* 197 Ariz. 156, 483 P.2d 1395 (1971); *State v. George,* 108 Ariz. 5, 491 P.2d 838 (1971); *State v. Scarborough,* 110 Ariz. 1, 514 P.2d 997 (1973); *State v. Lippi,* 108 Ariz. 342, 498 P.2d 209 (1972); *State v. Mitchell,* 106 Ariz. 492, 478 P.2d 517 (1970). In most, but not all, such cases, the lesser conviction is the crime for which the statute provides the lesser maximum potential sentence. Likewise, in most such cases, equal concurrent sentences have been imposed on each count. In those instances where the actual sentences are not the same, the lesser sentence has been imposed for the lesser conviction.

These cases offer no guide in a situation where, as here, the trial court has suspended imposition of sentence on the crime carrying the greater maximum potential sentence and given a prison sentence on the crimes carrying the lesser maximum potential sentence.

In deciding what disposition to make of the erroneous sentencing proceeding here, we find that if we were to order the "lesser conviction," Count III (possession of marijuana for sale), set aside, we would then be disposed to order, in addition, that the suspended sentence and probation on Count II (transportation of marijuana) be vacated and that the case be remanded for resentencing on Count II. This is because it clearly appears to have been the intent of the trial court in this case that appellant

serve a term of years in prison for his conduct.

This disposition is not open to us, however, because it would violate the due process clause of the fourteenth amendment as announced by the United States Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656 (1969). The rule of *Pearce,* simply stated, is that on resentencing a defendant may not be given a greater sentence than that which was meted out originally (with certain limited exceptions not applicable to this case).[6] Resentencing on Count II (transportation of marijuana) would necessarily produce this result.

The statute relating to the crime of transporting marijuana (A.R.S. § 36–1002.07) provides for a sentence of not less than five years nor more than life imprisonment, with the condition that the defendant serve a minimum of three years before parole eligibility. Resentencing of appellant on this count would necessarily require the trial court to pass a greater sentence than originally imposed for two reasons. Since the sentence was originally suspended, any prison sentence on resentencing would exceed the suspended sentence on this count. Alternatively, if we were to take the prison sentence on Count III (possession of marijuana for sale) as the measure for the purpose of applying *Pearce,* resentencing on Count II is barred because the lowest prison sentence possible under the statute would exceed, in terms of years in prison, the original sentence on Count III. This is so because the statute relating to transporting marijuana (Count II) requires a minimum of three years in prison before parole eligibility, whereas the statute relating to possession of marijuana for sale (Count III), under which appellant is presently

---

6. The rule of *North Carolina v. Pearce,* supra, is also embodied in Arizona Criminal Rule 26.14 which states:

Where a judgment or sentence, or both, have been set aside on appeal, by collateral attack or on a post-trial motion, the court may not impose a sentence for the same of-

fense, or a different offense based on the same conduct, which is more severe than the prior sentence unless it concludes, on the basis of evidence concerning conduct by the defendant occurring after the original sentencing proceeding, that the prior sentence is inappropriate.

serving the prison sentence, requires a minimum of two years in prison before parole eligibility.

In view of this, we reject the foregoing as a potential disposition of the sentencing error in this case. Instead, we deem it appropriate and within the discretion of an appellate court to affirm the conviction and prison sentence of two to six years entered by the trial court on Count III (possession of marijuana for sale) and to order that the conviction and suspended sentence on Count II (transporting marijuana) be vacated. Likewise, the conviction for Count I, importing marijuana, (which was combined with Count II by the trial court) is also vacated, as it constitutes a violation of the same statute (§ 36–1002.07) as Count II, transporting marijuana.

AFFIRMED IN PART; REVERSED IN PART.

DONOFRIO, P. J., and OGG, J., concurring.