579 P.2d 1091

**STATE of Arizona, Appellee,**

v.

**William Wallace WALKER, Appellant.**

**No. 4142.**

Supreme Court of Arizona,
En Banc.

April 26, 1978.

Rehearing Denied May 31, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer III, and Steven D. Sheldon, Asst. Attys. Gen., Phoenix, for appellee.

John P. Otto, Phoenix, for appellant.

HAYS, Justice.

Appellant William Wallace Walker was charged by information with "Attempted Transportation of Marijuana" in violation of A.R.S. § 36–1002.07. Following the denial of a motion to suppress certain physical evidence, appellant waived jury trial and submitted the issue of guilt to the court. He was found guilty on the basis of stipulated documentary evidence, including police reports and transcripts of the preliminary hearing and motion to suppress. Error is alleged in the trial court's denial of the motion to suppress. We have taken jurisdiction of this appeal pursuant to 17A A.R.S. Sup.Ct. Rules, rule 47(e)(5).

On November 24, 1976, Cheryl Jo Brenton and Teresa Klipsch flew from the state of Indiana to Phoenix for the purpose of buying marijuana from appellant. They checked into a local motel and telephoned him. The next morning, Thanksgiving Day, appellant met them at the motel room and sold them a quantity of marijuana for $3,000 in cash. The marijuana was individually wrapped in paper, in kilo-sized units which were rectangular in shape. After the purchase, these packages were placed into the girls' two large suitcases, along with some of their personal effects. Neither suitcase contained any property belonging to appellant. The suitcases, which had the girls' names on them, were locked and carried to the trunk of appellant's automobile, a 1968 Ford LTD. Appellant then drove the two girls and their luggage to Sky Harbor International Airport, to enable them to catch a return flight to Indiana. He parked the car at the curb in front of the appropriate terminal building, but in a three-minute parking zone. Brenton proceeded to the airline ticket counter while appellant and Klipsch brought in the luggage from the car trunk. They were late for the normal check-in procedure; although they were able to purchase tickets for the desired flight, they were informed that their luggage could not be loaded for them but would have to be carried on

board. The ticket agent requested appellant to help the girls carry their luggage down to the boarding gate, as there were no airline personnel available to do so at that moment. Appellant agreed, and the three headed toward the boarding area.

Sergeant Robert Henry of the Phoenix Police Department was in charge of the security detail at Sky Harbor on that morning; Henry had about 22 years of police experience and had been working security at Sky Harbor for three and one-half years. At about 9:00 a. m. he noticed appellant and the two girls headed toward the security checkpoint, where passengers and luggage are "screened" before being allowed to proceed to the boarding area. Henry was not acquainted with any of the three, but his attention was drawn to them because of his prior experience with passengers arriving late for eastbound flights, carrying large suitcases. He positioned himself so that he would be able to view the screen when the two suitcases passed along the conveyor through the X-ray machine. Appellant set the two suitcases up on a table, and they were placed on the conveyor and passed through the X-ray. On the screen, Henry viewed numerous dark-colored objects, uniform in size and rectangular shape. These objects were consistent with the appearance of kilo-sized "bricks" of marijuana, which Henry had seen many times before. When the suitcases reached the end of the conveyor, appellant removed one and Henry removed one. Henry then asked appellant whether he could look inside the suitcases. Appellant replied that the suitcases were not his, that they belonged to the girls, that he did not know the girls, and that he was merely carrying the suitcases in conformity with a request from a "Skycap". The girls likewise denied ownership of the locked suitcases. They said that they had no key nor combination for the suitcases, as they were taking them to a friend. Henry then "puffed" the sides of the suitcases and placed his nose near the seams. He smelled a familiar odor and was convinced that the bags contained marijuana. After the girls again denied having a key or combination to unlock either suitcase, Henry arrested all

three for "transporting—possession of marijuana" and they were taken to the airport security office. There, about 15–30 minutes after the arrest, the bags were opened in the presence of appellant and the two girls, but without their consent. Contained in the bags were numerous kilo-sized "bricks" of marijuana and some personal articles. The girls' purses contained personal identification, airline tickets to Indiana, keys to the suitcases, and some sheets of lined, light-green writing paper. After receiving so-called *"Miranda"* warnings, the three gave statements indicating that the two girls had arrived together at the airport in a taxicab, while appellant had received a ride there from a friend. Around 10:00 or 10:30 a. m. the three were transported to police headquarters.

Officer Raymond Gough, an assistant Phoenix Police Department officer, was working traffic control at Sky Harbor Airport on the morning in question. He first noticed appellant's 1968 Ford parked at the curb in front of the terminal building at around 9:15 a. m. The car was parked in a "red, three-minute zone". At approximately 9:30 a. m. he placed a parking violation citation on the windshield of the vehicle. At 11:00 a. m. the vehicle was still parked in the same location. Shortly thereafter, he contacted Sergeant Henry in the security office in regard to the overparked automobile. The usual procedure would be to impound such vehicles if the owners could not be located at the airport. Henry and other police officers then accompanied Gough to the curb in front of the terminal building where appellants's car was illegally parked. There was a parking citation on the vehicle's windshield and the windows were rolled down. As he approached the car Henry could see a piece of light-green, lined paper on the front seat, similar to that which had come from the purse of one of the girls previously arrested with appellant. Henry also testified that he detected the odor of marijuana emanating from the car's interior when he reached the open window and looked inside. There were no keys in the ignition, and none were located in the interior. Henry entered the car and began

looking for evidence of ownership, while another officer returned to the building to telephone for a "check" on the car's license plate number. Henry located the automobile registration in the unlocked glove compartment and discovered that the vehicle belonged to appellant. Likewise, the "check" on the vehicle plates revealed appellant's ownership. At that point, because of the parking violation and because of appellant's prior arrest, Henry determined that he would seize and impound the vehicle, and thus began an inventory of the items therein. A search of appellant, and of several areas where he had been at police headquarters, failed to locate the keys to the vehicle. Appellant denied having the keys and stated that he did not know how his automobile got to the airport. Apparently the keys were never located. During the search of the automobile, Henry removed the rear seat in order to inspect the contents of the trunk. He could see a large suitcase in the trunk. The vehicle trunk was pried open; the unlocked suitcase therein contained two more "kilos" of marijuana, $3,000 in cash, two boxes of plastic bags, a box of baking soda, a set of scales, and a notebook made up of the same light-green, lined paper previously observed on the vehicle's front seat and in one of the purses of the arrested girls. Fingerprints of the appellant and one of the girls were found on the scales and on some of the plastic bags. After the inventory, tools and battery cables were removed for safekeeping and the car was in fact towed and impounded. It is undisputed that throughout these events, no search warrant was ever sought nor was one ever obtained by any of the police officers involved.

## THE "CHECKPOINT" SEARCH OF THE LUGGAGE

Appellant assigns as error the failure of the trial court to suppress the marijuana discovered in the suitcases belonging to Klipsch and Brenton, which he had carried to the "checkpoint" within the terminal building. Both parties to this appeal have recognized the initial problem regarding ap-

pellant's standing to challenge the search of this luggage.

The subject of standing to challenge search and seizures as "unreasonable" and "illegal" under the Fourth Amendment to the United States Constitution has received considerable attention. In *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the United States Supreme Court held that "[t]he premise that property interests control the right of the Government to search and seize has been discredited." 387 U.S. at 304, 87 S.Ct. at 1648. Accordingly, in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it was held that the "trespass" doctrine would no longer be controlling in analysis of governmental search and seizure and that whatever a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected" because "the Fourth Amendment protects people, not places." 389 U.S. at 351, 88 S.Ct. at 511.

For cases in which an essential element of proof for the prosecution was the possession of premises or property, a concept which later became known as "automatic standing" was first announced in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The dilemma facing defendants in these cases was summarized thus:

> "To establish 'standing', Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges . . . may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him." 362 U.S. at 261–62, 80 S.Ct. at 731.

In announcing the "automatic standing" solution to the dilemma, it was said:

> "The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing . . . ." 362 U.S. at 263–64, 80 S.Ct. at 732.

However, a different solution to the same dilemma was subsequently proposed in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons*, one Garrett testified, at a motion to suppress certain evidence obtained as a result of a governmental search of a suitcase, that he was the owner of the suitcase. This testimony was admitted against him at trial and he was convicted. The Court recognized:

> "[I]n this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394, 88 S.Ct. at 976.

As a result the Court held:

> "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.*

The latest pronouncement on the general requirement of standing is *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). *See State v. Billups*, 118 Ariz. 124, 575 P.2d 323 (filed February 8, 1978). In *Brown* the Supreme Court held that a person would not have standing if: 1) he was not on the premises at the time of the contested search and seizure; 2) he alleged no proprietary or possessory inter-

est in the premises; or 3) he was not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence *at the time of the contested search and seizure.* The petitioners in *Brown* had been convicted of transporting and conspiring to transport stolen goods in interstate commerce to their co-conspirator, whose retail store was searched under a defective warrant while petitioners were in custody in a different state. The charges against petitioners were limited to acts committed before the day of the search. The Court ruled that petitioners had no standing to challenge the store search, because conviction did not rest on possession of the seized evidence *at the time of the contested search and seizure.* Additionally, in discussing the "automatic" standing rule of *Jones* in light of the later *Simmons* decision, it was noted:

> "The self-incrimination dilemma, so central to the *Jones* decision, can no longer occur under the prevailing interpretation of the Constitution.
>
> .    .    .    .    .
>
> "But it is not necessary for us now to determine whether our decision in *Simmons, supra,* makes *Jones'* 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense .  .  .  charged.'
>
> .    .    .    .    .
>
> "Again, we do not decide what this vice of prosecutorial self-contradiction warrants the continued survival of *Jones'* 'automatic' standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such 'automatic' standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction. Petitioners were afforded a full hearing on standing and failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized." 411 U.S. at 228–29, 93 S.Ct. at 1568–69.

Whatever may be the continued validity of "automatic" standing as set forth in the *Jones* decision, we feel that it has no applicability to the instant case. As in *Brown,* the transportation of which appellant herein was convicted had terminated prior to the contested governmental action. Here, appellant had abandoned any interest in the suitcases prior to their seizure and search.

■ It is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned. *See Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *State v. Childs,* 110 Ariz. 389, 519 P.2d 854 (1974); *State v. Myers,* 117 Ariz. 79, 570 P.2d 1252 (1977). As was said in *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973):

> "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search (citations omitted)." 474 F.2d at 176.

In *Lurie v. Oberhauser,* 431 F.2d 330 (9th Cir. 1970), three robbery suspects were arrested as they prepared to board a plane at Los Angeles International Airport, and one of the three turned over seven luggage claim checks to officers. The corresponding seven items of luggage were obtained from the airline and the suspects were asked to identify their individual bags, respectively. All three denied any knowledge of, or interest in, one of the suitcases. A search of that suitcase subsequently revealed stolen property. The Court of Appeals held:

> "The right to protection against unreasonable search and seizure is personal and a defendant in a criminal case who claims no proprietary or possessory interest in the seized property has no standing to object to its admission in evidence on Fourth Amendment grounds. (Citations omitted).

"The appellants disclaimed any proprietary or possessory interest in the incriminating evidence and by so doing abandoned whatever interest they might have had in the property from possession of the claim check. Having abandoned the suitcase they have no standing to object that the search of the suitcase was not incident to their arrest." 431 F.2d at 333.

In *United States v. Colbert, supra,* the two appellants were carrying briefcases down a street. When approached by police officers they set the briefcases down. In response to questions, they denied ownership of the briefcases or any knowledge about them and attempted to walk away from the officers and the briefcases. A search of the briefcases revealed shotguns, and appellants were convicted of possession of unregistered sawed-off shotguns. The Court of Appeals ruled that appellants abandoned the briefcases before the search, could entertain no reasonable expectation of privacy in them, and therefore lacked standing to challenge the searches. It was said that "[p]olice pursuit or the existence of a police investigation does not of itself render abandonment involuntary". 474 F.2d at 176. In regard to the *Jones* rule of "automatic" standing, it was stated:

"[W]e do not think the *Jones* rule of standing was intended to prevent the government from showing voluntary pre-search abandonment, if it can, or to apply to a possession prosecution when such abandonment is shown." 474 F.2d at 177.

Similarly, in the instant case, we hold that appellant voluntarily abandoned whatever interest he may have had in the girls' suitcases, and therefore lacks standing to challenge their search and seizure. *Lurie v. Oberhauser, supra.*

### THE AUTOMOBILE SEARCH

▮ Appellant further contends that the trial court erred in failing to suppress items found as a result of the search of the unlocked suitcase found within the locked trunk of his automobile. On the facts of this case, we think the following language of *State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974) is appropriate:

"It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

"[A]utomobiles, because of their mobility, could be searched without a warrant upon facts not justifying a warrantless search of a residence or office, so long as the officers conducting the search of the automobile had probable cause to believe, prior to beginning the search, that they would find the instrumentality of a crime or evidence pertaining to a crime." 520 P.2d at 848.

*See also State v. Hunt,* 118 Ariz. 431, 577 P.2d 717 (filed April 7, 1978). Here, the officers' attention was directed to the car because of the parking violation. When they approached the vehicle, they detected the odor of marijuana emanating from the interior. *See State v. Harrison,* 111 Ariz. 508, 533 P.2d 1143 (1975); *United States v. Payne,* 555 F.2d 475 (5th Cir. 1977). The officers knew approximately when the vehicle had first been observed parked in that location, and when they had first observed appellant and the two female suspects inside the terminal building. They observed a piece of paper in the front seat which appeared similar to one found in the purse of one of the female suspects; detected the odor of marijuana; and discovered that appellant, who had previously been found in possession of a large amount of marijuana, was the owner of the vehicle. We believe that the combination of these circumstances constituted sufficient probable cause to justify the search of the vehicle, including the locked trunk and the closed suitcase therein.

See *State v. Benge, supra; State v. Becerra*, 111 Ariz. 538, 534 P.2d 743 (1975). While the officers may have had time to secure a warrant for the auto search, we said in *Benge* that:

"For constitutional purposes, there is no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and on the other hand, carrying out an immediate search without a warrant; . . . given probable cause to search either course was reasonable under the Fourth Amendment." 520 P.2d at 848.

*See also Chambers v. Maroney, supra.*

We believe there is an additional reason why this search and seizure were neither illegal nor "unreasonable" within the meaning of the Fourth Amendment. Sergeant Henry testified that he was seizing and impounding the vehicle because of the parking violation, which was standard procedure, and because of the arrest of appellant; he inventoried the car prior to having it towed. Since June 25, 1973 it has been settled in Arizona that once law enforcement officials take possession and control of an automobile, it is lawful to inventory the contents of the automobile and use what is found as the basis for criminal prosecution. *In re One 1965 Econoline, etc.*, 109 Ariz. 433, 511 P.2d 168 (1973); *State v. Ruiz*, 109 Ariz. 437, 511 P.2d 172 (1973); *see also South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). A finding that the officer had probable cause to search the vehicle is not inconsistent with a reasonable "inventory" search, for, as we said in *In re One 1965 Econoline, etc., supra*:

"We believe that there has been unnecessary confusion caused by insisting upon an either/or requirement as to the motives for inventorying the contents of the automobile. It is unrealistic to require that in justifying the inventory search the police must affirm that they had no hope or expectation of finding something incriminating. What makes an inventory search reasonable under the requirements of the Fourth Amendment is not that the subjective motives of the police were simplistically pure, but whether the facts of the situation indicate that an inventory search is reasonable under the circumstances." 511 P.2d at 170.

*In re One 1965 Econoline, etc.*, is also authority for the proposition that the inventory may reasonably include the contents of closed containers within the vehicle, such as the suitcase located in the trunk of appellant's vehicle.

"We do not agree with the rationale that while it is reasonable to inventory the vehicle in the first instance for those things which are in clear or plain view, it becomes unreasonable to inventory what is not in plain view. If one of the reasons for conducting the inventory is to safeguard valuables which might be present, it is illogical to prohibit law enforcement officials from searching those areas wherein valuables are most likely to be placed." 511 P.2d at 171.

At appellant's request we have carefully reviewed *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and have concluded that it is inapplicable to the instant case. In *Chadwick* the Court held that federal narcotics agents were required to obtain a search warrant before opening a locked footlocker which they had seized at the time of the arrest of its owners, although there was probable cause to believe that the footlocker contained contraband; and that there were no "exigent circumstances" presented which called for an immediate search and justified dispensing with the warrant requirement. The search was not made incidental to a valid arrest, nor did it fit within the "movable vehicle" or "inventory" exceptions to the general search warrant requirement, as does the factual situation presented herein.

From all of the foregoing, we have concluded that the trial court was correct in refusing to suppress any of the physical evidence as requested by appellant. The trial court's rulings on a motion to suppress will not be disturbed on appeal, absent clear and manifest error. *State v. Dugan*, 113

Ariz. 354, 555 P.2d 108 (1976). We have found no error.

## THE TRIAL COURT'S FAILURE TO INFORM APPELLANT OF THE NATURE AND RANGE OF POSSIBLE SENTENCE PRIOR TO SUBMISSION OF THE CASE

In *State v. Woods*, 114 Ariz. 385, 561 P.2d 306 (1977), we held that when a submission to a trial court for decision is tantamount to a guilty plea, 17 A.R.S. Rules of Criminal Procedure, rule 17.2 is applicable. Rule 17.2 requires, in relevant part, that:

"Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understands the following:

· · · · ·

"b. The nature and range of possible sentence for the offense to which the plea is offered, including any special conditions regarding sentence, parole, or commutation imposed by statute;"

This requirement was not satisfied in the instant case. However, the point was first raised by appellee, State of Arizona, in its answering brief. In his reply, appellant states that he "makes no claim of prejudice which might flow from the trial court's failure to strictly observe the provisions of Rule 17.2(b) as interpreted in *Woods*." Therefore, we need not prolong this opinion with consideration of whether the submission herein was tantamount to a guilty plea; appellant has expressly waived this point on appeal. *See Callaghan v. Boyce*, 17 Ariz. 433, 153 P. 773 (1915).

Having found no reversible error, the judgment of conviction and the sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and GORDON, J., concur.

HOLOHAN, J., concurs in the result.