536 P.2d 252
**STATE of Arizona, Appellee,**
v.
**Baron Edward SUMTER, Appellant.**
**No. I CA–CR 817.**

Court of Appeals of Arizona,
Division 1,
Department A.
June 12, 1975.
Review Denied Oct. 7, 1975.

Bruce E. Babbitt, Atty. Gen., by Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Paul E. Hunter, Jr., Yuma, for appellant.

OPINION

DONOFRIO, Judge.

On July 9, 1974 in the Superior Court of Yuma County the appellant, Baron Edward Sumter, was convicted by a jury of the crimes of possession of marijuana, possession of marijuana for sale, and transportation of marijuana. The trial judge vacated all but the possession of marijuana for sale count, and sentenced appellant on that

one count to not less than two nor more than three years in the Arizona State Prison. He now appeals from the judgment and sentence.

The appellant raises four questions for review. The first concerns the denial of the trial court to grant a continuance when appellant's co-defendant, Benjamin Reyes, failed to appear on the day of trial. The court severed the two cases and appellant was then tried separately. Reyes was arrested in conjunction with the activities with which appellant was also charged, and both men were released on bond pending trial. Reyes is a Mexican national who apparently has fled the jurisdiction. There is no assurance that Reyes will ever be apprehended. His testimony is not known, and it is only speculation as to what he would testify concerning the events surrounding appellant's arrest and trial. It is obvious that the State had nothing to do with Reyes' disappearance, and it is to be noted that the trial court has revoked Reyes' bond and issued a bench warrant for his arrest. Appellant has made no showing of abuse of discretion by the trial court, nor any prejudice to the appellant, and we find no error. State v. Benge, 110 Ariz. 473, 520 P.2d 843 (1974).

The second question raised by appellant concerns the refusal of the trial court to require the prosecutor to elect between the two counts before submitting them to the jury. Appellant was charged with two counts: 1) possession of marijuana for sale, A.R.S. § 36–1002.06; and 2) transportation of marijuana, A.R.S. § 36–1002.07. The court also instructed the jury on the lesser included offense of simple possession of marijuana. The jury returned convictions on all three crimes.

It is true that A.R.S. § 13–1641 prevents the imposition of punishment for both charges as interpreted by State v. Benge, supra, but we think that defect was cured in the instant case, as in Benge, when the trial court sentenced appellant only on the one count of possession of marijuana for sale and vacated the other count at the sentencing. See State v. Benge, supra. The factual situation in Benge is close to the instant case, in that both cases involved the submission to the jury of one count of possession of marijuana for sale and one count of transportation of marijuana. Therefore, under the rule of the Benge case, there was no error in submitting both counts to the jury in the instant case, and sentencing appellant on only the one count—possession of marijuana for sale.

A third question raised on appeal concerns whether entrapment as a matter of law has been established. Appellant asserts a form of entrapment defense based on "the intolerable degree of governmental participation in the criminal enterprise." The local police officers in Yuma have set up surveillance on appellant Sumter based on a tip from an informant that Sumter was engaged in illegal narcotics dealings. They observed Reyes in Sumter's car during the course of their surveillance, and later decided to follow Reyes when the two parted company. Subsequently, the officers stopped Reyes, searched his car, and found three large bags full of marijuana bricks. The officers then decided to allow Reyes to continue with his apparent plan to deliver the marijuana to Sumter. Reyes did so, and the arrest of Sumter followed. The details of the stopping of the Reyes vehicle and its search will be noted later in this opinion.

Appellant asserts that the officers had a duty to seize the marijuana when they discovered it in Reyes' car, and that allowing it to be delivered to Sumter amounted to entrapment as a matter of law. We disagree. It is appellant's further claim that the marijuana became the State's property at the moment it was found in Reyes' car and that Reyes then became an agent of the police. Our interpretation of the record leads us to conclude that the police merely allowed the marijuana to be delivered in accordance with a

prearranged plan between Reyes and Sumter, and the police simply continued to monitor the crime until all participants could be identified. We think appellant was predisposed to commit the crime and the officer did not initiate the action of Reyes. It is a general rule that for entrapment to be established as a matter of law it is necessary for the government's evidence to show the criminal design for the crime charged originated with the government officials and was implanted in the mind of the innocent person so that he was induced to commit a crime he was not otherwise predisposed to commit. Sears v. United States, 343 F.2d 139 (5th Cir. 1965); Sendejas v. United States, 428 F.2d 1040 (9th Cir. 1970); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L. Ed.2d 366 (1973). We think the actions of the police in the instant case are reasonable in light of the surrounding circumstances, and do not amount to entrapment as a matter of law.

 The final question raised on appeal concerns the trial court's failure to suppress the marijuana as evidence of an alleged illegal search of Reyes' car. Since we hold that the search of Reyes' car was legal, we do not reach the question whether Sumter had standing to object to that search. We will consider the search of Reyes' car in two stages: 1) justification for the initial stopping of Reyes' car, and 2) probable cause for the resultant search of the trunk of Reyes' car. The Yuma area narcotics task force had received a tip from a confidential informant on April 1, 1974 that Sumter (a white male) was engaging in illegal narcotics dealings. On that date Sumter was staying at a motel in Yuma. He was driving a white car with California license plates. The officers set up surveillance of Sumter that day, but nothing incriminating resulted and Sumter returned to his home state of California. The informant's previous tips to the police had resulted in two arrests, one for illegal narcotics violation, and another for transporting illegal aliens. The informant had been paid by the police on other occasions for his information. When Sumter returned to Yuma on April 18, 1974, the informant again notified police who observed Sumter's actions again. This time they saw Reyes (a Mexican male) whom they had not known before, in Sumter's car with him as the two traveled around the Yuma area. The Sumter car, with Reyes in it, stopped at several locations in Yuma before going to McDonald's Drive-In where Reyes exited the Sumter car and left, alone, in his own car with Arizona license plates. Reyes was then followed by the police officers as he drove out of town and turned off of the main highway onto a gravel and dirt canal service road into the desert area. One of the officers drove past the area where Reyes had parked his car by the side of the road with the rear end of the car backed up under some tamarack trees in such a position that it could not be seen from the road. As he drove past, Reyes saw the officer and quickly closed the car door and ran to the front of the vehicle as if to flee. The officer drove on down the road where he met another officer. As the two officers were sitting in their separate cars discussing what to do next, Reyes appeared in his own car on the way back toward the main highway. He was then stopped by the two officers who identified themselves. One of the officers testified that Reyes turned his wheels on his car apparently as if to drive around the two officers' cars. The officers showed their badges and one held a shotgun on Reyes and ordered him out of his vehicle, speaking in Spanish. Reyes did not speak English. At this point in time did the officers have justification for making the initial stop of Reyes' car? We think they did. We hold that there was reasonable suspicion on the part of the officers who were experienced in the methods used by marijuana smugglers in the Yuma area that criminal activity might be afoot. At that point there might not have been probable cause to arrest Reyes, but this investigative

stop was not unreasonable under the circumstances. The officers reasonably suspected Reyes was involved with Sumter in illegal narcotics dealings and felt that if they did not stop him then he would evade them as he had now discovered that he was under surveillance. Not every detention of a person without probable cause constitutes a violation of that person's Fourth Amendment rights. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also State v. Salcido, 22 Ariz.App. 167, 525 P.2d 298 (1974); State v. Ruiz, 19 Ariz. App. 84, 504 P.2d 1307 (1973).

 After stopping the Reyes car one of the officers walked to the rear of the car and discovered fresh palm prints on the otherwise dusty trunk lid. The record indicates that the road gave off a large quantity of dust when a vehicle passed over it and coated an otherwise clean car with dust. The second officer, who spoke to Reyes in Spanish, testified that Reyes appeared nervous when he was stopped on the canal service road. When the trunk was subsequently opened the officers found the marijuana. At this point in time these two officers knew Sumter was parked in a shopping center near a college in Yuma. When asked where he was taking the marijuana, Reyes said he was taking it to someone parked in a shopping center near the college. As it turned out, the location was Wynn's Gila Store in Yuma. After arresting Reyes, and initialing one of the marijuana bricks in the car trunk, the officers allowed Reyes to complete the delivery to Sumter while they kept the parties under surveillance, and subsequently obtained a search warrant and arrested Sumter and found the three bags of marijuana in his car trunk. Was there probable cause to search the trunk of Reyes' car when it was stopped out on the canal service road? We think there was. When the additional facts of the fresh palm prints in the dust of the trunk lid and the nervousness of Reyes are considered with the prior events and knowledge of the officers, together with the suspicion that the car carried contraband, we find probable cause existed to make the search of the Reyes car. An automobile occupies a different position in the law of search and seizure than buildings because it is often not practicable to obtain a search warrant since an automobile can be quickly moved out of the locality. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We hold that it was reasonable for the officers to believe that Reyes' car contained illegal marijuana and the exigent circumstances justified the warrantless search of the automobile. State v. Williamson, 20 Ariz. App. 397, 513 P.2d 686 (1973).

Therefore, we hold that it was not error to fail to suppress the evidence of the marijuana discovered by the officers in the trunk of Reyes' car, and that it was proper under the circumstances to allow Reyes to complete the prearranged delivery to appellant Sumter.

Affirmed.

OGG, P. J., and FROEB, J., concur.