625 P.2d 327

**STATE of Arizona, Appellee,**

v.

**Ronald Jacob LAUGHTER, Appellant.**

**No. 1 CA–CR 4051.**

Court of Appeals of Arizona,
Division No. 1,
Department A.

Decided Aug. 5, 1980.

Rehearing Denied Feb. 11, 1981.

Review Denied March 3, 1981.

Robert K. Corbin, Atty. Gen., by William J. Schafer III, Chief Counsel, Criminal Division, Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Richard M. Grimsrud, Prescott, for appellant.

## OPINION

WREN, Judge.

Appellant, Ronald Jacob Laughter, was convicted of armed robbery in violation of A.R.S. §§ 13–1902 and 13–1904, and sentenced to a presumptive term of 15.75 years imprisonment under A.R.S. § 13–604(D). We reverse.

On appeal, three issues are presented:

1) Was appellant's consent to search his automobile involuntary because of oppressive circumstances;

2) Was it error for the trial court to refuse to give appellant's requested instruction that armed robbery requires that the victim be actually in fear or have a reasonable fear that the robber was armed; and

3) Was appellant properly sentenced as a repeat offender under A.R.S. § 13–604(D), or should he have been sentenced under the dangerous crime, first offender classification of A.R.S. § 13–604(G).

The relevant facts establish that at approximately two o'clock a. m., appellant accosted the victim, an employee of a pizza restaurant, as he was about to make a night bank deposit for his employer in Cottonwood, Arizona. The victim was struck in the face by appellant, thrown against the outer wall of the bank and threatened that he would be shot if he did not cooperate. At no time did the victim see a weapon, although he testified that while his back was turned a hard object was placed against his neck. He could not tell whether it was a gun. The victim dropped an envelope containing the deposit of approximately $814.00. Appellant picked up the envelope, tied the victim's hands to a bush, and then fled across the shopping center's parking lot.

The appellant was seen by two police officers as he ran. He disappeared from their vision for a few seconds, and then the officers saw an automobile accelerate quickly from the parking lot with its headlights off. One of the officers pursued in his marked car, stopping appellant approximately one-half mile from the shopping center. Within four to five minutes of the stop, and prior to any search of the appellant's car, a police broadcast informed the officer of the robbery. Appellant was handcuffed and placed under arrest. When asked by the officer if he could search the car, appellant gave his consent. However, the officer's search of the automobile was without success. A few minutes later, follow up officers arrived. When told of the fruitless search, the officer in charge backtracked to the shopping center, searching for the envelope. After 15 or 20 minutes,

when his search also failed to turn up the envelope, he returned to where appellant's car was stopped and appellant was again asked if the vehicle could be searched. Again, appellant consented. During the second search, the deposit envelope was found tucked under the back seat.

## CONSENT TO SEARCH

Prior to trial, appellant filed a motion to suppress the use in evidence of the deposit envelope on the ground that his consent to search the automobile was not voluntary and therefore the resulting warrantless search was illegal. In support of this argument, appellant points to the fact that at the time consent was given, he was in custody, there were several police officers present in uniform and he had not been advised that he had the right not to give consent.

Initially we point out that we respond to the issue of consent solely because it is the only argument advanced by the State as a defense to appellant's contention of an illegal search. In our opinion, the combination of circumstances here constituted probable cause for a warrantless search of the vehicle for fruits of the robbery, and that whether appellant's consent was voluntary is therefore a moot issue. In *State v. Benge*, 110 Ariz. 473, 478, 520 P.2d 843, 848 (1974), it was pointed out that:

> For constitutional purposes, there is no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and on the other hand, carrying out an immediate search without a warrant; and that given probable cause to search either course was reasonable under the Fourth Amendment.

It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office. (citations omitted.)

*See also State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978); *State v. Hunt*, 118 Ariz. 431, 577 P.2d 717 (1978).

As to any contention that, since appellant was handcuffed and under arrest, the officer had adequate time in which to obtain a search warrant, *State v. Benge* noted that in *Husty v. United States*, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931):

> the court rejected the argument that since sufficient time had elapsed between the officer's receipt of the information and the search of the automobile to have enabled him to procure a search warrant, the search was unreasonable. 110 Ariz. at 478, 520 P.2d at 848.

Turning back to the question of consent, since *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the law has been clear that whether a consent to search is voluntary is to be determined in light of all the surrounding circumstances. The fact that a suspect is in custody and whether he was advised of his right to refuse a search are factors to be considered. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *State v. Knaubert*, 27 Ariz. 53, 550 P.2d 1095 (1976). The inherent oppressiveness of uniformed police officers is yet another factor. However, in *State v. Watson*, 114 Ariz. 1, 559 P.2d 121 (1976), a showing that officers were in uniform and had their guns drawn was held insufficient, in light of other circumstances, to uphold the defendant's argument that his consent was involuntary.

We have carefully reviewed the record before us and find nothing to support appellant's claim that he was threatened or coerced into giving consent. Although at various times during the investigation at the scene of the stop there were several officers present, there is no indication that at any point guns were drawn or that there were any threatening words or activity on the part of the officers. Appellant was cooperative in all matters and even opened

the trunk of the car for one of the officers. Moreover, he had previously been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We hold that the trial court did not err in finding that the consent to search was valid.

## ARMED ROBBERY INSTRUCTION

■ Appellant next contends that the trial court erred in refusing to give the following requested instruction:

> If you do not believe, beyond a reasonable doubt, that CARLSON LOOMER was actually in fear or had a reasonable fear that the Defendant was armed with a deadly weapon or dangerous instrumentality at the time of the alleged commission of the crime, you may not convict the Defendant of Armed Robbery.

This instruction does not require the jury to find actual presence of a deadly weapon or dangerous instrumentality but would base culpability upon a reasonable belief by the victim that the defendant was so armed.[1] However, armed robbery, as defined in A.R.S. § 13–1904(A)[2] is not satisfied by the defendant pretending to have a gun or even using a fake gun. *State v. Moore*, 126 Ariz. 251, 614 P.2d 332 (1980). Because the actual physical presence of a deadly weapon or dangerous instrument is required to satisfy the crime of armed robbery, the victim's

belief that a weapon is present, even if justified by an objective standard, is insufficient to establish guilt.[3] Thus, because the instruction was not a proper statement of the law, it was correctly refused. *State v. Austin*, 124 Ariz. 231, 603 P.2d 502 (1979).

■ Prior to trial appellant also submitted an instruction requiring the jury to find that appellant actually possessed a deadly weapon or dangerous instrumentality.[4] During the settling of instructions, appellant did not object to the trial court's refusal to give the requested instruction, nor has appellant raised the issue on appeal. Under these circumstances, Rule 21.3(c), Rules of Criminal Procedure, 17 A.R.S. would normally mandate waiver of any error on appeal. *State v. Dippre*, 121 Ariz. 596, 592 P.2d 1252 (1979), *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976). However, failure to object does not waive instructional defects rising to the level of fundamental error. *State v. Gentry*, 123 Ariz. 135, 598 P.2d 113 (App.1979); *State v. Dippre*, and this Court is required by A.R.S. § 13–4035 to review the record for fundamental error. Fundamental error occurs in a criminal case when the trial judge fails to instruct upon matters vital to a proper consideration of the evidence. *State v. Gentry*, *State v. Para*, 120 Ariz. 26, 583 P.2d 1346 (1978).

---

**1.** The State in its answering brief argues that the new Criminal Code does not have fear as an element of robbery. This is clearly true. However, the instruction does not go to that point.

**2.** A.R.S. § 13–1904 provides as follows:

  A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

    1. Is armed with a deadly weapon; or

    2. Uses or threatens to use a deadly weapon or dangerous instrument.

  B. For the purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character.

  C. Armed robbery is a class 2 felony.

**3.** Under A.R.S. § 13–1904(B) an evidentiary presumption is provided whereby the exhibition "of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character." However, this presumption is only an evidentiary presumption and does not detract from the ultimate question of whether an actual deadly weapon or dangerous instrument was used.

**4.** Appellant's requested instruction number 5 was as follows:

> If you do not believe that the defendant at the time of the alleged commission of the crime, actually possessed a deadly weapon or dangerous instrumentality or if you have a reasonable doubt whether the defendant actually possessed a deadly weapon or dangerous instrumentality, you may not convict the defendant of armed robbery.

Here, the jury was instructed that armed robbery was satisfied if the appellant was "armed with a deadly weapon" or "uses or threatens to use a deadly weapon or dangerous instrument." There was nothing in the instructions to inform the jury that the threatened use of a weapon had to refer to a weapon in appellant's possession or readily accessible to him. As such, they were not instructed on a critical element of the crime and failure to so instruct was fundamental error.

However, even when "fundamental error" has been found, reversal is not automatic. It is only required when the error is prejudicial to the defendant. *State v. Mendiola*, 23 Ariz.App. 251, 532 P.2d 193, *adopted*, 112 Ariz. 165, 540 P.2d 131 (1975). Although there was evidence upon which the jury could have found that the appellant possessed a deadly weapon, we cannot say that the jury properly considered the issue. In fact, during the jury's deliberation, the following note was sent to the trial judge, "Just a threat. Is that an armed robbery?" To this the judge merely referred the jury to the instructions given. Under these circumstances, we cannot say beyond a reasonable doubt that the conviction would not have been different with a proper instruction. Therefore, the judgment must be vacated and the matter remanded for a new trial.[5]

## SENTENCING

Since the matter must be remanded for a new trial the asserted error as to sentencing is now moot. Nevertheless, we have decided to address the issue due to its importance and the fact that it involves a question not heretofore answered by the appellate courts in Arizona.

Appellant contends that because the conviction of armed robbery was his first conviction of a dangerous offense he should have been sentenced under A.R.S. § 13–604(G) rather than as a repeat offender under A.R.S. § 13–604(D). Under A.R.S. § 13–604 the legislature has provided enhanced punishment for dangerous and repetitive offenders. Subsection (G) provides, in pertinent part, as follows:

Upon a first conviction of a class 2 or 3 felony involving use or exhibition of a deadly weapon or dangerous instrument ... the defendant shall be sentenced to imprisonment for not less than the sentence and not more than three times the sentence authorized in § 13–701 for the offense for which the person currently stands convicted ....

A.R.S. § 13–1904(C) provides that armed robbery is a class 2 felony. A.R.S. § 13–701(B)(1) gives a presumptive term of seven years imprisonment for a class 2 felony. Thus, under appellant's theory, even though the State alleged and proved that appellant had been convicted of two prior felonies, those felonies were nondangerous in nature and under A.R.S. § 13–604(G) the range of sentence would be seven to twenty-one years.

Appellant was sentenced under A.R.S. § 13–604(D) which deals with nondangerous repeat offenders. This section of the statute states:

D. Except as provided in subsection G of this section, a person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a Class 2 or 3 felony, and who has been previously convicted of two or more felonies shall be sentenced to imprisonment for at least twice the sentence and not more than four times the sen-

---

5. In our opinion, to discourage the use of deadly weapons the feigned use of a deadly weapon should carry a lesser punishment than the actual use of a deadly weapon. Also, we believe that feigned use of a deadly weapon should be a greater offense than simple robbery because of the life endangering environment created. However, this is a legislative function, not a judicial one and as noted in *State v. Moore*, the legislature chose to reject this idea when it omitted from aggravated robbery the Criminal Code Commission's recommendation that robbery be aggravated when the person committing the robbery "represents by word or gesture that he or she or an accomplice is armed with a deadly weapon or dangerous instrument."

tence authorized by Section 13–701 for the offense for which the person currently stands convicted and shall not be eligible for suspension or commutation of sentence, probation, pardon, or parole or release on any other basis until not less than two-thirds of the sentence imposed by the court has been served. Upon imposing a sentence pursuant to this subsection, the court shall impose as a presumptive term three-fourths of the median of the allowable range. The presumptive term may be mitigated or aggravated within the range prescribed under this subsection pursuant to the terms of Section 13–702, subsections C, D and E.

Because appellant had been convicted of two prior felonies, the trial court computed his sentence as not less than fourteen nor more than twenty-eight years and gave the presumptive three-fourths of the median allowable range. (The median range was twenty-one years. Three-fourths of twenty-one is 15.75.)

We find nothing in conflict in these statutes as argued by appellant. As a first offender of a dangerous offense, appellant certainly was subject to the sentencing provisions of A.R.S. § 13–604(G). Since his prior convictions were nondangerous in nature, he was not subject to the enhanced punishment provisions of that subsection. However, there is nothing in the statute which implies that he could not be sentenced as a repeat offender under A.R.S. § 13–604(D). To hold otherwise would lead to the absurd result which appellant seeks. By committing robbery without a gun there is no question that appellant would have been subject to the sentencing provisions of A.R.S. § 13–604(D) and would have faced a possible sentence of fourteen to twenty-eight years. He argues that because he used a gun, he must be punished as a first offender of a dangerous offense under A.R.S. § 13–604(G) and thus be subject to a sentence of no less than seven no more than twenty-one years. In essence, his argument is that by using a deadly weapon he assured a lesser sentence than had he not used a deadly weapon. We will not presume that the legislature intended this absurd result. *See State v. Valenzuela*, 116 Ariz. 61, 567 P.2d 1190 (1977).

The judgment and sentence are reversed and the cause remanded for a new trial.

DONOFRIO, J., concurs.

FROEB, P. J., concurring in result only.