IN THE COURT OF APPEALS



FILED BY CLERK

JUL 16 2009

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2008-0024 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| DANIEL DIAZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CR200700013

Honorable Charles A. Irwin, Judge

AFFIRMED IN PART; REVERSED IN PART AND REMANDED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Jonathan Bass                                    Tucson
                                                              Attorneys for Appellee

Law Offices of Kelly A. Smith
  By Kelly A. Smith                                                        Yuma
                                                             Attorney for Appellant

E S P I N O S A, Presiding Judge.

¶1         After a jury trial, appellant Daniel Diaz was convicted of one count of

possession of a dangerous drug for sale (methamphetamine weighing more than nine grams)

and sentenced to an aggravated term of twenty-five years' imprisonment. On appeal, he argues the trial court erred in not suppressing statements he made after what he contends was an illegal arrest and in sentencing him pursuant to A.R.S. § 13-604 rather than A.R.S. § 13-712.[1] For the reasons stated below, we affirm his conviction but remand to the trial court for resentencing.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to sustaining the trial court's ruling, considering only the evidence presented at the suppression hearing. *State v. Teagle*, 217 Ariz. 17, ¶ 2, 170 P.3d 266, 269 (App. 2007). In December 2006, Sierra Vista police officers received a tip that Diaz would be purchasing methamphetamine in Tucson and returning to Sierra Vista in either a blue Cadillac or a red Buick, accompanied by a woman who would be concealing the drugs in her vagina. When officers observed a blue Cadillac "roll[ing] across [a] stop sign line . . . into a marked crosswalk" before stopping at an intersection in Sierra Vista, they initiated a traffic stop. One officer talked to the driver, N., while another officer spoke to Diaz, who was in the passenger seat. The officer noticed Diaz appeared extremely nervous and was continuously opening and closing the glove box, dropping and picking up papers, and checking the car's side and rearview mirrors. A few

---

[1]Section 13-604(D) has since been repealed and recodified as A.R.S. § 13-703(C) and (J). *See* 2008 Ariz. Sess. Laws, ch. 301, §§ 15, 28. Section 13-712 has since been repealed and replaced by A.R.S. § 13-709.03, which provides additional guidelines for mitigating and enhancing sentences for successive violations of A.R.S. § 13-3407. *See* 2008 Ariz. Sess. Laws, ch. 301, §§ 34, 36. We refer to former §§ 13-604(D) and 13-712 because they were the provisions in effect when Diaz committed his offense.

minutes after the stop, the officers brought a drug-detection dog to the car, and it alerted to the presence of drugs. Diaz and N. were then asked to step out of the vehicle, and the dog alerted to the presence of drugs on the front passenger seat and the center console. N. thereafter admitted she was carrying methamphetamine in her vagina, and both she and Diaz were arrested. Following a jury trial, Diaz was sentenced as outlined above pursuant to § 13-604(D).

## Discussion

### Probable Cause for Arrest

¶3        Diaz contends he was arrested without probable cause and the trial court erred by not suppressing statements he made to law enforcement officers following his arrest. Statements made as a direct result of an illegal arrest must be suppressed. *See State v. Winegar*, 147 Ariz. 440, 449, 711 P.2d 579, 588 (1985). "Whether an illegal arrest occurred is a mixed question of fact and law. We give great deference to the trial court's factual determination, but we review the ultimate question de novo." *State v. Blackmore*, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996). A warrantless arrest is lawful if it is supported by probable cause. *See* A.R.S. § 13-3883(A); *State v. Keener*, 206 Ariz. 29, ¶ 9, 75 P.3d 119, 121 (App. 2003). "Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable [person] to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it." *State v. Richards*, 110 Ariz. 290, 291, 518 P.2d 113, 114 (1974). If the court's determination that probable cause existed at the time

3

of arrest is supported by substantial evidence, we will not disturb it on appeal. *See State v. Marquez*, 135 Ariz. 316, 318, 660 P.2d 1243, 1245 (App. 1983). "Substantial evidence has been described as 'more than a mere scintilla' of evidence; but it nonetheless must be evidence that 'reasonable persons could accept as sufficient to support'" the fact finder's conclusion. *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913-14 (2005), *quoting State v. Hughes*, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997).

¶4        Diaz contends the tip that he would be traveling from Tucson, accompanied by a woman who would be carrying drugs for him; the drug dog's alert on the vehicle, and N.'s admission that she was carrying methamphetamine, were insufficient to establish probable cause for his arrest. But that was not the only evidence presented and, as the state points out, the tip the officers received was substantially more specific than Diaz suggests in his argument. The tipster specifically described two possible cars and travel from Tucson to Sierra Vista on that specific evening. Diaz was, in fact, in a car matching the tipster's description, en route to Sierra Vista, in the time-frame provided. Furthermore, the tipster indicated that Diaz's companion would have the drugs concealed in her vagina, which was corroborated when N. admitted that to police before Diaz's arrest. *See Illinois v. Gates*, 462 U.S. 213, 245 (1983) (anonymous letter established probable cause when it "contained a range of details relating to . . . future actions of third parties ordinarily not easily predicted").

¶5        In addition to the tip, the officers were aware of Diaz's reputation for being involved in methamphetamine transactions in the community and, during the stop, they collected more evidence that further corroborated the tip that Diaz was transporting drugs.

4

While the car was stopped, Diaz behaved nervously, dropping and picking up papers and repeatedly checking the car's side and rearview mirrors. *See State v. Sumter*, 24 Ariz. App. 131, 135, 536 P.2d 252, 256 (1975) (suspect's nervous behavior a factor in determining probable cause). And the drug-detection dog alerted to areas of the car to which Diaz had access, the center console and the passenger seat where he had been sitting. *See In re Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, 217 Ariz. 199, ¶ 29, 171 P.3d 1240, 1247 (App. 2007) (noting probative value of alert by narcotics-detection dog).

¶6 Although conceding "there was certainly probable cause" to arrest N. because of her admission, Diaz contends that did not create probable cause to arrest him. But this argument ignores his nervous behavior, the drug dog's alert on his seat, and the informant's tip that Diaz would be transporting drugs in a certain car along a certain route during a specified time and in a defined manner. Moreover, given the officers' information that Diaz and N. were acting in concert, Diaz could have been arrested on an accomplice theory. *See State v. Cordero*, 174 Ariz. 556, 559-60, 851 P.2d 855, 858-59 (App. 1992) (probable cause existed to arrest passengers for fleeing and endangerment based on evidence passengers and driver had agreed to steal car); *see also United States v. Hernandez*, 322 F.3d 592, 598-99 (9th Cir. 2003) (probable cause to arrest passenger and driver due to close proximity to contraband and suspicious behavior). We therefore cannot say the trial court erred in finding Diaz's arrest was supported by probable cause.

5

**Sentencing**

¶7 Diaz next contends the trial court erred by sentencing him as a repetitive offender pursuant to § 13-604(D), rather than under § 13-712, which is the sentencing statute specifically for methamphetamine offenses. We review questions of statutory construction de novo. *State v. Gonzales*, 206 Ariz. 469, ¶ 7, 80 P.3d 276, 278 (App. 2003). Diaz was convicted of violating A.R.S. § 13-3407(A)(2), a class two felony.[2] Under § 13-712, the presumptive sentence is ten years for a first conviction and fifteen years for a repeat offense. In contrast, § 13-604(D) provides a sentencing range of fourteen to twenty-eight years for a class two felony committed by an offender with two or more historical prior convictions. As noted earlier, Diaz was sentenced to an aggravated, twenty-five-year term under § 13-604(D).

¶8 Although, as the state points out, we will avoid "hypertechnical constructions [of a statute] that frustrate legislative intent," *State v. Cornish*, 192 Ariz. 533, ¶ 16, 968 P.2d 606, 610 (App. 1998), "[w]hen we interpret a statute, our analysis begins and ends with its plain language if it is unambiguous." *State v. Streck*, 544 Ariz. Adv. Rep. 20, ¶ 7 (Ct. App. Apr. 22, 2009).

¶9 As Diaz correctly notes, § 13-3407(E) provides that a person convicted of violating § 13-3407(A)(2) "shall be sentenced pursuant to § 13-712." He thus maintains the plain language of this statute dictates he should be subject to what, in this case, is a more

---

[2]Section 13-3407 was amended effective December 31, 2008. The amendments made no substantive changes relevant to Diaz's conviction but reflect the replacement of the applicable sentencing provision, § 13-712, with § 13-709.03. *See* 2008 Ariz. Sess. Laws, ch. 301, § 72. We refer in this decision to the provision in effect when Diaz committed his offense.

lenient sentencing scheme. The state responds that applying § 13-712 would create an absurd result, requiring the trial court to impose a lesser sentence for a repeat offender simply because his crime involved methamphetamine. Citing *Goddard v. Superior Court*, 191 Ariz. 402, 956 P.2d 529 (App. 1998), and *State v. Laughter*, 128 Ariz. 264, 625 P.2d 327 (App. 1980), the state urges that we look beyond the language of the statute to avoid this outcome.

¶10 In *Goddard*, Division One of this court rejected as "contrary to common sense" a reading of statutory sentencing language that would make a person who was twice convicted of possessing a controlled substance for personal use ineligible for mandatory probation, while requiring mandatory probation for persons with two or more prior convictions for possession for sale, a more serious crime. 191 Ariz. 402, ¶¶ 7-10, 956 P.2d at 531-32. Similarly, in *Laughter*, this court rejected a literal reading of sentencing statutes that would require a lesser sentence for a repeat offender committing his first dangerous-nature offense than if the same offender had committed an additional, nondangerous offense. 128 Ariz. at 268-69, 625 P.2d at 331-32. The state argues that the present case is analogous and that we similarly should decline to apply a technical reading of the statute that would give a repeat offender a more lenient sentence simply because it was his first methamphetamine offense.

¶11 Although we agree with the state that the cited cases demonstrate how reluctant courts are to impose lesser sentences for more serious crimes based on statutory inconsistencies, *Goddard* and *Laughter* cannot control because of the significant differences between the statutes involved in those cases and the ones before us. In *Goddard*, the relevant

7

legislation did not conclusively state whether mandatory probation was possible or impossible for a repeat offender who possessed a controlled substance for sale, 191 Ariz. 402, ¶ 8, 956 P.2d at 531, whereas here, in contrast, the language of § 13-3407 clearly specifies that § 13-712 applies. And, in concluding that mandatory probation was unavailable in *Goddard*, the court had the added benefit of a then-recently-enacted amendment to the statute that clarified the intent to create mandatory probation for first-time, personal-use possessors. *Id*. at ¶¶ 3-4.

¶12 Likewise in *Laughter*, this court reconciled two subsections of § 13-604 that had left trial courts without guidance when sentencing for repetitive, nondangerous offenders for their first dangerous offenses. In determining that a trial court could legally impose the greater statutory penalty for a repeat offender with nondangerous prior convictions rather than the lesser sentence provided for a first-time dangerous-nature offense, we noted there was "nothing in conflict" about these statutes because there was "nothing in the statute [that implied the defendant] could not be sentenced as a [nondangerous] repeat offender." 128 Ariz. at 269, 625 P.2d at 332.

¶13 Here, as noted above, the language of § 13-3407 expressly instructs the trial court to impose a sentence pursuant to § 13-712. The latter section, however, has some of the same problems as the statutes at issue in *Goddard* and *Laughter* in that § 13-712 appears not to anticipate the possibility of a repetitive offender, particularly one who has committed crimes other than methamphetamine offenses. Although § 13-712 provides a greater possible sentence for a person convicted of a second violation of § 13-3407, *see* § 13-712(B), it does

8

not provide for a recidivist who has committed three or more methamphetamine offenses. Under § 13-712, a third violation could yield no more than a twenty-year sentence and then only if the trial court aggravated the sentence to the fullest extent permitted. In contrast, § 13-604(D) provides a statutory maximum sentence of twenty-eight years for an offender with two or more prior felony convictions. And, if all methamphetamine sentences are subject to § 13-712, courts must disregard any historical prior felony convictions that are not methamphetamine-related and treat those convicted under § 13-3407 as first-time offenders, regardless of their felonious pasts.

¶14        Such a result is clearly at odds with the overall sentencing scheme, which typically punishes recidivism, *see, e.g.*, § 13-604 (providing longer sentences for repeat offenders), and singles out methamphetamine use for additional penalties, *see State v. Hasson*, 217 Ariz. 559, ¶ 6, 177 P.3d 301, 303 (App. 2008) (legislative history showed legislature intended to "stiffen the penalties for methamphetamine-related crimes"); *compare* A.R.S. § 13-702(D) *with* § 13-712 (presumptive term for class two felony five years, but presumptive sentence for violation of § 13-3407 ten years). Our belief, however, that this outcome is not likely what the legislature intended cannot override the express language of §§ 13-3407 and 13-712. Adopting the interpretation urged by the state would go beyond merely closing a gap in ambiguous legislation, *see generally Goddard*, 191 Ariz. 402, 956 P.2d 529; *Laughter*, 128 Ariz. 264, 625 P.2d 327, and would entail excising from a statute its unequivocal language. That we cannot do. "We do not sit as a second legislature to rewrite laws that may strike us as improvident." *In re Pima County Juv. Appeal No. 74802-2*,

9

~~164 Ariz. 25, 34, 790 P.2d 723, 732 (1990), *abrogated on other grounds by State v. Getz*, 189 Ariz. 561, 944 P.2d 503 (1997); *see also State v. Gonzalez*, 216 Ariz. 11, ¶ 9, 162 P.3d 650, 652 (App. 2007) (statutory language required imposition of lesser sentence for child molester even though result "defies logic").~~

## Disposition

¶15        For the foregoing reasons, we affirm Diaz's conviction but remand this case to the trial court for resentencing consistent with this decision.

_____
PHILIP G. ESPINOSA, Presiding Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Chief Judge


_____
JOHN PELANDER, Judge